IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHAWN G.,[1]

          Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

No. 6:19-cv-00674-HZ

OPINION & ORDER

Ari D. Halpern
HALPERN LAW GROUP, P.C.
62910 O.B. Riley Rd., Suite 100
Bend, OR 97703

    Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Joseph J. Langkamer
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

     Plaintiff Shawn G. brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for immediate payment of benefits.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB and SSI on June 29, 2015. Tr. 110–11.[2] In both applications, Plaintiff initially alleged an onset date of January 1, 1997. Tr. 110–11. Plaintiff subsequently amended his alleged onset date to June 29, 2015. Tr. 13. This amendment disposed of his DIB claim. Tr. 182. His application was denied initially and on reconsideration. Tr. 114–31 On December 5, 2017, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 28. On February 2, 2018, the ALJ found Plaintiff not disabled. Tr. 21–22. The Appeals Council denied review on March 9, 2019. Tr. 1.

## FACTUAL BACKGROUND

     Plaintiff alleged disability based "bipolar, schizophrenia, heart condition, [and] diabetes." Tr. 209. At the time of the alleged onset date, he was 46 years old. Tr. 20. He has a high school

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

education and past relevant work experience as a short order cook, merchandise deliverer, automobile salesman, and dry cleaner helper. Tr. 20.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

3 – OPINION & ORDER

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets his burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date June 29, 2015. Tr. 15. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "diabetes; hypertension; bilateral sensorineural loss of hearing; and bipolar disorder." Tr. 15. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 15–17. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [A]ssigned work must be limited to unskilled tasks learned in 30 days or less or by brief demonstration. Additionally, the assigned work must require no more than brief intermittent occasional work related contact with coworkers, supervisors, and the public. Finally, the noise level must be limited to no greater than moderate such as the noise level in a normal office setting.

Tr. 17. Because of these limitations, the ALJ concluded that Plaintiff could not perform his past relevant work. Tr. 20. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "laundry folder," "ticket printer and tagger," and "electronics worker." Tr. 21. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 21.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to provide legally sufficient reasons for discounting the opinion of licensed clinical social worker ("LCSW") Holly Moore; (2) rejecting the opinion of state agency psychological consultant Joshua Boyd, Psy.D.; (3) omitting the opinion of state agency psychological consultant Bill Hennings, Ph.D.; (4) discrediting the lay witness testimony of Plaintiff's mother; (5) and finding that Plaintiff's impairments do not meet or equal Listing 12.04. The Commissioner concedes that the ALJ erred at step three when assessing Listing 12.04, considering the opinion of Dr. Boyd, and ignoring the opinion of D. Bill Hennings. Def. Br. 5, ECF 16. However, the Commissioner argues the Plaintiff's mental

impairments and the opinions of the state agency psychological consultants require further evaluation by the ALJ.[3] Thus, the parties disagree on whether the Court should remand this case for an award of benefits or further proceedings. Pl. Br. 10; Def. Br. 2. Because the ALJ erred in discrediting Ms. Moore's opinion and Plaintiff meets the requirements of Listing 12.04, the Court remands this case for an immediate award of benefits and does not reach Plaintiff's remaining arguments.

I.      **Opinion of Holly Moore, LCSW**

Plaintiff argues that the ALJ erred in giving little weight to the opinion of Holly Moore, LCSW. There are two types of medical sources in social security cases: "acceptable" and "not acceptable." 20 C.F.R. § 416.902. Acceptable medical sources are considered "treating sources" and are necessary to establish the existence of a medically determinable impairment. SSR 06–03p at *2[4]; 20 C.F.R. §§ 404.1513, 404.1527. Only acceptable medical sources may give medical opinions. *Id*. Medical sources classified as "not acceptable" or "other sources" may offer information "based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. SSR 06-03p.

Licensed clinical social workers are not considered acceptable medical sources. *Anderson v. Colvin*, 223 F. Supp. 3d 1108, 1119 (D. Or. 2016) (citing SSR 06-03p). The ALJ must consider several factors when evaluating the opinion of such sources, including: (1) the length of relationship and frequency of contact; (2) the consistency of the opinion with other evidence; (3) quality of source's explanation for opinion; (4) any specialty or expertise related to impairment; and (5) any other factors tending to support or refute the opinion. *See* SSR 06-03p; 20 C.F.R.

---

[3] The Court notes that the Commissioner does not address Plaintiff's remaining arguments.
[4] SSR 06-03p was rescinded by 82 Fed. Reg. 15263-01 (Mar. 27, 2017).

§§ 404.1527(c)(2), 416.927(c)(2). An ALJ errs when he rejects the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). The Ninth Circuit has held that to properly reject the testimony of "other" or non-acceptable medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Turner v. Comm'r. of Social Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

The record contains medical records of Ms. Moore's treatment of Plaintiff between October 2, 2015, and October 17, 2017, tr. 875–983, as well a medical source statement regarding Plaintiff's functional limitations, tr. 988–91. In her August 2017 Annual Health Assessment, Ms. Moore explained that Plaintiff has been in treatment for issues related to his diagnosis of bipolar disorder with mood incongruent psychotic features, including delusions and hallucinations. Tr. 876, 883. During manic episodes, Plaintiff experiences inflated self-esteem or grandiosity, decreased need for sleep, racing thoughts, distractability, and increased goal-directed activity. Tr. 883. When depressed, Plaintiff suffers from loss of energy, difficulty concentrating, and suicidal ideation with no intent or plan. Tr. 883. She explained that despite some improvement in his mood fluctuation with medication, Plaintiff has had minimal improvement in his delusions and auditory hallucinations. Tr. 876. As a result, Ms. Moore changed Plaintiff's service goals to longer-term care to help Plaintiff accept and work with ongoing symptoms. Tr. 876.

In her medical source statement, Ms. Moore opined that Plaintiff's symptoms "impair and interfere with social and occupational functioning," affecting his ability to maintain socially appropriate behavior, complete a workday without psychologically based symptoms, and get along with coworkers or peers. Tr. 989. She also found that Plaintiff's mental limitations would likely cause him to be off-task more than 30% of an 8-hour workday. Tr. 991. She opined that

Plaintiff would struggle to carry out detailed instructions, concentrate, and maintain regular attendance. Tr. 989–90. She further explained that his distractibility "depends on the day" and some days are accompanied by "delusions and voices [that] can impair functioning up to 2 days." Tr. 991. She also observed that Plaintiff's symptoms "can vary from day to day, making it difficult to be consistent, accountable and reliable in a work setting." Tr. 991. She found that he would miss three days of work per month. Tr. 991.

The ALJ accorded little weight to Ms. Moore's medical source statement, finding it inconsistent with the evidence of record. Tr. 19. In doing so, the ALJ emphasized Plaintiff's "ability to manage his symptoms along with positive respon[se] to his ongoing treatment plan." Tr. 19 (citing tr. 901, 971). The ALJ also found that Ms. Moore's opinion is not consistent with her treatment notes, "which fail to support the extreme limitations she assessed in her medical source statement." Tr. 19.

First, the ALJ's characterization of Plaintiff's response to his treatment plan as positive is unsupported by the record. Indeed, the same chart notes relied on by the ALJ in support of her finding indicate that Plaintiff was still suffering from hallucinations and delusions. Tr. 901, 971. In addition, the improvement of psychological symptoms "must . . . be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Throughout the treatment record, Plaintiff reports symptoms of mania, delusional thinking, and hallucinations. Tr. 982, 976 (reporting manic episodes), 691 (manic state with features of psychosis), 877 (hearing voices), 876–983 (group therapy sessions for a voice-hearers group). And Ms. Moore's own treatment notes explain that Plaintiff had minimal response to treatment. Tr. 918. As a result, she

determined that Plaintiff's treatment should be refocused on acceptance of his psychotic symptoms to improve his daily functioning. Tr. 918. Accordingly, the ALJ's finding that Plaintiff had a positive response to his treatment plan is not supported by substantial evidence.

Second, the ALJ cites no evidence in support of her finding that Ms. Moore's treatment notes are inconsistent with her opinion. Rather, Ms. Moore's findings—including impaired social functioning, distractibility, inability to carry out detailed instructions, unaccountability—are supported by Plaintiff's medical records reflecting social isolation, ongoing auditory hallucinations and delusions, difficulty sleeping, manic episodes, and racing thoughts. Tr. 356, 666, 669, 691, 902. Because the ALJ failed to cite germane reasons supported by substantial evidence to accord Ms. Moore's opinion little weight, the Court finds the ALJ erred. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (where treatment notes are consistently supported by medical evidence of the record, the ALJ errs in citing inconsistency as a germane reason for rejecting testimony).

**II.    Step Three: Listing 12.04**

Plaintiff argues that the ALJ erred in finding that his impairment does not meet or equal the Listing 12.04 for Affective Disorders. If a claimant meets or medically equals a listed impairment at step three of the sequential analysis, he is presumed disabled regardless of age, education, or work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d). An impairment, or combination of impairments, is medically equivalent to a listing "if it is at least equal in severity and duration to the criteria of any listed impairment," considering, "all evidence in [the] case record about [the] impairment(s) and its effects on [the claimant] that is relevant[.]" 20 C.F.R. § 404.1526(a), (c). Finally, "the claimant's illnesses 'must be considered in combination and must not be fragmentized in evaluating their effects.'" *Lester v. Chater*, 81 F.3d 821, 829 (9th

9 – OPINION & ORDER

Cir.1995) (quoting *Beecher v. Heckler*, 756 F.2d 693, 694–95 (9th Cir. 1985)). "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Id*.

Listing 12.04 applies to affective disorders, including depressive, bipolar, and related disorders. A claimant may establish *per se* disability under Listing 12.04 by satisfying paragraphs A and B together, or paragraphs A and C together. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04. To meet the requirements of paragraph A of Listing 12.04, Plaintiff must show "[m]edical documentation of . . . bipolar disorder characterized by three or more of the following: pressured speech; flight of ideas; inflated self-esteem; decreased need for sleep; distractibility; involvement in activities that have a high probability of painful consequences that are not recognized; or increase in goal-directed activity or psychomotor agitation." *Id.* at § 12.04(a). In evaluating the severity of Plaintiff's mental impairments, the ALJ must consider the paragraph B or C criteria. *Id.* at § 12.04(b). To satisfy paragraph B, a claimant must have an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. *Id*. Paragraph C of Listing 12.04 requires that a claimant suffering from an affective disorder establish his mental disorder is both "serious and persistent." *Id.* at § 12.04(c). To do so, Plaintiff must have a medically documented history of the existence of the disorder for at least two years and evidence of both:

> (1) Medical treatment, mental health therapy, psychological support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (*see* 12.00G2b); and
>
> (2) Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00 G2c).

*Id.*

In this case, the ALJ determined that Plaintiff suffers from the severe impairment of bipolar disorder but found that his mental impairments did not meet the requirements of a listed impairment. Tr. 15–17. First, the ALJ concluded that Plaintiff's mental impairments did not meet the paragraph B criteria because they caused only "mild" and "moderate" limitations on his functional capacity—not the "marked" or "extreme" restrictions that are required by the listing.[5] Tr. 16. Second, evaluating the paragraph C criteria, the ALJ stated:

> There is no evidence of medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and diminishes the symptoms and signs of your mental disorder; and marginal adjustment, that is you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

Tr. 16. Therefore, the ALJ concluded Plaintiff's condition did not meet or equal Listing 12.04. Tr. 15–17.

The Court agrees that the ALJ erred in her step three finding. The ALJ's analysis does not address whether Plaintiff met the requirements under paragraph A. However, substantial evidence in the record supports the conclusion that the Plaintiff exhibits at least four of the seven enumerated symptoms that evidence bipolar disorder under paragraph A of Listing 12.04: inflated self-esteem, decreased need for sleep, flight of ideas, and distractibility. In her 2017

---

[5] The parties do not dispute the ALJ's paragraph B findings.

11 – OPINION & ORDER

psychological assessment, Ms. Moore observed that Plaintiff's "manic episodes have involved symptoms that include inflated self-esteem or grandiosity, decreased need for sleep (when not on sleep medication), more talkative, racing thoughts, distractible, and increased goal directed activity." Tr. 883. The treatment record also supports these findings. For example, Plaintiff told providers on several occasions that he was not sleeping much during the night, had disrupted sleep, or found it difficult to sleep. Tr. 462, 666, 669, 883, 978, 971, 976. Plaintiff was prescribed trazodone to treat his sleeplessness. Tr. 702, 772, 887, 971 (noting sleep remains at four to five hours per night despite increase in trazadone). He also reported racing thoughts and difficulty focusing. Tr. 665, 669, 671, 978. In addition, Plaintiff suffered from delusions as a result of his impairments, causing him to believe that he was a prophet or a reincarnated Joan of Arc. Tr. 972, 934, 930; *see also* tr. 44 (testifying that he had delusions of grandeur). Accordingly, the record demonstrates that Plaintiff satisfies paragraph A of Listing 12.04.

Plaintiff also meets the requirements of paragraph C. Again, as recited above, the ALJ found that the Plaintiff met two of the three requirements of paragraph C:

> There is no evidence of medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and diminishes the symptoms and signs of your mental disorder; and marginal adjustment, that is you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

Tr. 16. And contrary to the ALJ's finding, the medical record chronicles Plaintiff's impairment for the requisite two years. Tr. 876–983. Since October 2, 2015, Plaintiff has attended individual behavioral therapy sessions, medication management appointments, and voice-hearers groups at Deschutes County Mental Health to address his bipolar diagnosis. Tr. 883. During this period, the record includes progress reports, annual assessments, and medication lists describing

12 – OPINION & ORDER

Plaintiff's treatment for bipolar disorder. Tr. 876–983. Further, in her November 2017 medical opinion, Ms. Moore wrote that Plaintiff's "symptoms of auditory hallucinations and delusions have been consistent throughout the treatment." Tr. 991. She also concluded that Plaintiff's limitations had existed at the assessed severity since March 23, 2015. Tr. 990. Accordingly, the record demonstrates that Plaintiff's impairment satisfies both the paragraph A and paragraph C criteria of Listing 12.04.

### III.    Remand for Payment

The parties dispute whether this case should be remanded for further proceedings or immediate payment of benefits. Except in rare circumstances, remand for further proceedings is the appropriate course of action. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–1100 (9th Cir. 2014). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison*, 759 F.3d at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100–01 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020.  Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied.  *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule."). The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler*, 775 F.3d at 1101.

Remand for payment of benefits is the proper course in this case. As described above in Part II, the record establishes that Plaintiff meets the requirements of Listing 12.04. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04; 20 C.F.R. § 404.1520(a)(4)(iii), (d). And, contrary to the Commissioner's argument, the August 2015 and January 2016 opinions of Dr. Boyd and Dr. Hennings do not create a conflict on this issue. Both opinions state—without any explanation—that Plaintiff: (1) has "[a] medically determinable impairment . . . that does not precisely satisfy" paragraph A and (2) "evidence does not establish the presence of the 'C' criteria." Tr. 77, 105. But both also indicated that—at the time they undertook their review—there was "insufficient evidence to evaluate the claim." Tr. 78, 105. Further, as described in Part I, Plaintiff's improved symptoms do not create serious doubt that he is disabled, and the medical evidence pertaining to Plaintiff's mental impairments is consistent with the opinion of his treating provider, Holly Moore LCSW. Because record is complete and establishes Plaintiff's impairment meets Listing 12.04, Plaintiff is presumed disabled. Remand for additional proceedings would therefore serve no purpose and "would needlessly delay effectuating the primary purpose of the Social Security Act," which is "to give financial assistance to disabled persons[.]" *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Accordingly, the Court reverses the ALJ's decision and remands for an immediate award of benefits.

///

///

///

///

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for the immediate payment of benefits.

IT IS SO ORDERED.

DATED:___October 1, 2020_____.

                                      MARCO A. HERNÁNDEZ
                                      United States District Judge